## THE LICENSING OF VEHICLES UNDER THE NEW MUNICIPAL CODE.

[Common Pleas Court of Franklin County.]

THE CITY OF COLUMBUS v. ROBERT H. JEFFREY, MAYOR OF THE CITY OF COLUMBUS ET AL.

Decided, September 4, 1903.

*Licensing of Vehicles—As a Regulation—Raising Revenue An Incident —The Fees Prescribed—Burden Imposed must be Equal—Street and Interurban Cars Exempt from such a Regulation, When.*

1. Paragraph 9, Section 7, of the Municipal Code of 1902 empowers council to license vehicles to use the streets for the purpose of regulation, and not for the purpose of raising revenue further than is incident to regulation.
2. But in the absence of evidence showing that the fees prescribed are unreasonable, a court will not hold an ordinance providing for the licensing of vehicles invalid on the ground that it raises a tax for revenue.
3. Burdens imposed by such a measure must be equal, and discrimination in favor of a class of persons or against non-residents is unlawful.
4. Such licensing measures are largely justified on the ground that the employment of vehicles on the public ways casts a considerable expense upon the municipality for keeping such ways in repair; and where by grants from a municipality to street car and interurban companies it has been exacted that such companies, as a part of the burden of their franchises, repair, clean and sprinkle that portion of the streets lying between their outer rails and one foot beyond, another burden for the same thing can not be imposed under the guise of a vehicle license.

RATHMELL, J.

This action is brought by the city solicitor in the name of the corporation for an order of injunction to restrain certain executive officers of said city from proceeding to carry out the provisions of an ordinance enacted by the city council to regulate the use of certain vehicles and to license same, which enforcement of said ordinance it is claimed would result in the misapplication of the funds of the corporation, and be an abuse of the corporate powers of said city.

The grounds urged for the order are that the ordinance is invalid, illegal and unconstitutional, for the reasons set forth in the petition, among others that it is unauthorized by statute.

An ordinance of the council to be valid must be within the power conferred on that body. If the ordinance be invalid from the want of power in the council covering its extent and provisions, such suit to enjoin is properly brought, and *promptness* of *intervention* under such circumstances is commended by our Supreme Court, rather than delay until expenses have been incurred, the rights of third parties become involved, or other complications arise (*Gas & Water Co.* v. *Elyria,* 57 O. S., 383).

Ordinance No. 21316 in question, in Section 1 provides that owners of all vehicles used upon the streets of the city of Columbus shall pay annual license fees.

Section 2 provides how the applicant shall obtain the license through certain executive officers, and be entitled to a check bearing the number of the license and the year for which it has been taken, the keeping of a register of the name of the applicant, number of the license and date of issuance and the sum to be paid therefor.

Section 3 provides for the fees on certain vehicles, graded chiefly according to the number of horses used.

It is conceded in argument that whatever power the council possessed to license the use of the streets for vehicles as provided in said ordinance, is conveyed to it by Paragraph 9, Section 7 of the Municipal Code (O. L., 96, Extraordinary Session). That the license authority contained in R. S., 2670, is limited to vehicles used for hire, and does not meet the scope of this ordinance.

By said Section 7 it is provided:

"All municipal corporations shall have the following general power, and council may provide by ordinance or resolution for the exercise and enforcement of the same * * * * (Paragraph 9) : To regulate the use of carts, drays, wagons, hacking coaches, omnibuses, automobiles and every description of carriages kept for hire or livery stable purposes; *and to license and regulate the use of the streets by persons who use vehicles, or solicit or transact business thereon;* to prevent and punish fast driving or riding of animals, or fast driving or propelling of vehicles through the public highways; to regulate the transportation of articles through such highways and to prevent injury to such highways from overloaded vehicles, and to regulate the speed of interurban, traction, and street railway cars within the corporation."

It is urged that the ordinance provides for a *tax* and not for a *license.*

Judge Cooley, in his work on "Taxation," says:

"The grant of a license may be made by the state directly or it may be made indirectly through one of the municipal corporations of the state. Of the indirect grant it is to be observed that a municipal corporation, as such, has no inherent power to grant license or exact license fees; it must derive all its authority in this regard from the state, and the power must come by direct grant and can not be taken by implication. The terms in which a municipality is empowered to grant licenses will be expected to indicate with sufficient precision whether the grant is conferred for the purpose of revenue or whether on the other hand it is given for regulation merely.

"It is perhaps impossible to lay down any rule for the construction of such grants that shall be general and at the same time safe; but as all delegated powers to tax are to be closely scanned and strictly construed, it would seem that when a power to license is given, the intendment must be that regulation is the object, unless there is something in the language of the grant, or in the circumstances under which it is made, indicating with sufficient certainty that the raising of revenue by means thereof was contemplated. * * * *

"Where the grant is not made for revenue, but for regulation merely, a much narrower construction is to be applied. A fee for the license may still be exacted, but it must be such a fee only as will legitimately assist in the regulation. If the state intercede to give broader authority, it is a reasonable inference that it will do so in unequivocal terms" (Cooley on Taxation, 592-597).

Dillon in his work on "Municipal Corporations," in discussing ordinances relating to licensing, at Section 357, says:

"Charters not infrequently confer upon the corporation the power 'to license and regulate' or 'to license, regulate and tax.' * * * Concerning the useful trades and employments a distinction is to be observed between the power 'to license' and the power 'to tax.' In such cases the former right, unless such appear to have been the legislative intent, does not give authority to prohibit or to use the license as a mode of taxation with a view to revenue. But the reasonable fee for the license and the labor attending the use may be charged. * * * * In harmony with the foregoing principles it has been held that under the authority 'to license and regulate' draymen, etc., a municipal corporation may by ordinance require a license to be first taken out and charge a reasonable sum for issuing the same and keeping the necessary record, but can not by virtue of this authority, without more, levy a tax upon the occupation itself."

Substantially to the same effect is Tiedeman on "Municipal Corporations," 123. And the decisions of the courts speak with great unanimity in denial of the ability of municipal corporations to use the power of licensing as a revenue measure, unless a legislative intent is manifested that such power may be used for that purpose, including Ohio authorities (*City of Cincinnati* v. *Bryson,* 15 O., 625; *Mays* v. *City of Cincinnati,* 1 O. S., 268; *Baker* v. *City of Cincinnati,* 11 O. S., 534; *Marmet* v. *State,* 45 O. S., 63, 75; *North Hudson Co. Ry.* v. *Hoboken,* 41 N. J. L., 71; *In re Win Tin,* 22 Fed. Rep., 701).

It follows from these authorities that the power "to license" conferred on the council by Paragraph 9, Section 7 of the Municipal Code, must not only be strictly construed, but that the object of such power so granted by the state, unless there be language indicating that the grant is conferred for the purpose of revenue, must be construed as one for regulation merely, and an exercise of the police power and not of the taxing power. How far has the state indicated, by said Paragraph 9, the character of the power intended to be conferred? The direct taxing power is conferred on council by another section of the code (Section 32). We observe further that the clause *"to license and regulate the use of the streets by persons who use vehicles,"* chiefly depended upon to support the ordinance under consideration, not only sounds in regulation, but is associated with other clauses of the said paragraph, all having for their object regulation. I observe no language indicating a legislative intent that the power to raise revenue was contemplated. As a rule in this state, where license measures have been entertained as revenue measures, the phrase "to license and regulate" has been accompanied by the words "to tax"; or the license power has been followed by some such phrases, "to charge a reasonable sum therefor, to be paid into the treasury of the corporation," including their authority to raise revenue (*Chilven* v. *People,* 11 Mich., 45; *North Hudson Co. Ry.* v. *Hoboken, supra;* 58 Pa. St., 120, *supra*).

It is therefore clear in my judgment that Paragraph 9 must be construed as conferred for the purpose of regulation, and not for raising revenue further than as an incident to regulation.

Now it is insisted that the council has not attempted in this ordinance *to regulate,* but has attempted to *tax* for revenue only;

that no more can be charged than the probable expense of issuing the license.

It will be observed that this ordinance requires a license to be procured for a graduated sum to be paid by the owner; the keeping of a register of the name of the applicant, number of the license and date of the issuance by the auditor; and the exhibit of the license check in a certain place.   Does this constitute regulation within the meaning of that term?

The power to require a license is one of the means of regulation (*Allerton* v. *City of Chicago,* 6 Fed. Rep., 355; *Chicago Packing & Provision Co.* v. *City of Chicago,* 88 Ill., 221).

The court in *Allerton* v. *Chicago, supra,* remarked:

"There are, no doubt, a great variety of other names that might be adopted to accomplish the purpose, but these municipalities are not restricted as to the means they shall employ to regulate the business."

"But the limitation of the license to the necessary expense will still leave a considerable field for the exercise of discretion when the amount of the fee is to be determined" (Cooley on Taxation, p. 598).

"And although it is a judicial question whether the sum exacted is a reasonable one, a wide latitude is given to the exercise of the legislative discretion in determining the amount of the license fees" (Tiedeman on Municipal Cor., 123, 124).

Pain, J., in *Tenny* v. *Lenz,* 16 Wis., 566, says:

"We can not assent to the position that if the sum required for a license exceeds the expense of issuing it, the act transcends the licensing power and poses a tax.   By such a theory the police power would be shorn of all efficiency."

The burden thus devolved on public officials may justly authorize a charge beyond the mere expense of filling up the license blanks (Gholson, J., 11 O. S., 543).

The fact that some revenue is incidentally derived from a license does not render the ordinance invalid (2 A. & E. Ency., 789).

The presumption is that the fee does not exceed the expense of regulation unless the contrary plainly appears from the face of the ordinance or from evidence (*Fayetteville* v. *Carter,* 52 Ark., 301; *Alkins* v. *Phillips,* 26 Fla., 281; Cooley on Taxation, 408-410; Dillon on Municipal Corporations, 358; 40 Mich., 258).

In harmony with these dicta and authorities, in *Cincinnati* v. *Bryson*, 15 Ohio, 625, *supra*, it was considered, under power "to license and regulate," that $3.00 was not too much for draymen to pay as a reasonable fee for issuing the license and keeping the necessary register. Likewise the matter considered in *Marmet* v. *The State* (45 O. S., 63), was a license measure. Section 29 provided that "the owner of all vehicles used upon the streets of the city should pay annual license fees," the same being graded according to the number of horses used, not very unlike in amount the fees required by the ordinance at bar. The moneys received from licenses from vehicles was placed to the credit of the street repairing fund. It was urged that this was a tax under the form of a license to raise revenue. Spear, Judge, said:

"We, however, do not view them in any such light. * * * Without undertaking to lay down any general rule as to the power to license or tax occupation, and confining our holding to the necessities of the case before us, we think it may safely be affirmed upon principle and authority that power to regulate by license and to compel payment of a reasonable fee may be maintained where special benefit is conferred at the expense of the general public, or the business imposes a special burden on the public. * * * And believing that the exactions required by the law in question here fairly come within the rule thus stated, we hold them to be valid." (Also *Bogart* v. *The State*, 20 L. B., 458).

The foregoing cases, sustained as regulating measures, did not provide in more detail for regulation nor of a different kind than the ordinance at bar. So that in the absence of evidence showing that the fees prescribed are unreasonable or prohibitory, I conclude that the ordinance is not invalid as laying a tax for revenue.

Again it is urged that the ordinance unjustly discriminates between persons of the same class, between residents and non-residents, operates unequally and is inconsistent in its provisions.

By Subdivisions 1-32, Section 3 of the ordinance, license fees are imposed on certain classes of vehicles or vehicles used for certain purposes, while by a second classification in the latter part of the same section, a different list of license fees is imposed upon vehicles used in the same kinds of business, but owned by persons living without the city. For example by Sub-section 9 of Section 3 a four-horse wagon of a resident hauling logs, lumber, brick,

stone, or ice would require a license of $10.00, while by Sub-section 4 of the second classification in latter part of Section 3, a four-horse wagon of a person not living within the city, used for hauling the same materials would require a license of $12.00. Thus discriminating against non-residents of the same class.

And again by Section 6, owners of more than one vehicle belonging to either class may obtain the use of all, one at a time, by shifting the license tax.

Further by Sub-section 20, a surrey drawn by one horse requires a license of $3.00, while by Sub-section 21, a surrey drawn by one horse requires a license of $2.00; and others have been pointed out.

I am of opinion that the objections noted on this proposition are well taken and render the ordinance illegal. Burdens imposed by such measures must be equal. Discrimination in favor of any class of persons or against non-residents are unlawful (21 A. & E. Ency., 784-804; *State* v. *Gardner,* 58 O. S., 599, 609; *Sipe* v. *Murphy,* 49 O. S., 536, 546; *Harmon* v. *The State,* 66 O. S., 249).

And further, it is claimed that under Subdivision 9 of Section 7 of the Municipal Code, interurban and street railway cars can not be licensed as *vehicles.*

Section 4 of the ordinance provides:

"The owner of every interurban, traction and street railway company using the streets of said city shall pay annually to the city for each of their said cars so using the streets of said city the following: For each car equipped with one or more motors, $50.00; for each car not so equipped, $25.00."

Is the word "vehicle" in the second clause of Subdivision 9 broad enough to embrace *street* and *interurban cars,* designated in the subdivision to be regulated as to speed?

It has been pointed out by counsel that the *"owners"* of such companies are the stockholders, and that Section 4 as phrased is probably impossible of enforcement; and that there is discrimination against interurban lines in favor of steam cars. I do not find it necessary to consider these propositions, and shall pass on to the question whether under Subdivision 9, Section 7 of the Code, interurban and street railway cars can be licensed as "vehicles."

The first clause of Subdivision 9 provides for the regulation of the use of carriages particularized as carts, drays, wagons, hackney coaches, omnibuses and automobiles, *kept for hire or livery stable*

*purposes.*    The language of this clause can not be intended to include street or interurban cars because they are not kept for such purposes.

The rest of the subdivision has for its subject the licensing and regulation of the use of the streets by "vehicles," to prevent *"fast driving or propelling of vehicles,"* to prevent the *"overloading of vehicles."* And by the last clause a distinction is made between *"vehicles"* and *"interurban, traction and street railway cars."* I am of opinion that by distinguishing and emphasizing in what particular *cars* may be regulated, viz., as to *speed,* the law-making power has excluded interurban, traction and street cars from the scope of the clause providing for the licensing and regulation of "vehicles," and that it was not its intention to embrace such cars within its provision. This construction finds some support in the case of *Monongahela Bridge Co.* v. *Pittsburgh & Birmingham Ry. Co.,* 114 Pa. St., 478, where the words, "other wheeled vehicles of whatsoever description," were held not to include "street cars."

Again it is to be observed that in the Marmet and Brysom cases above referred to as sustaining the license of vehicles, the courts justified the measures to a considerable extent upon the ground that the employment of vehicles on the public ways casts large expense and burden upon the city in the way of keeping the streets open and in repair, and that thereby a special benefit is conferred at the expense of the general public, for which the power to regulate and the requirement of a license fee may be maintained. The council have intimated a similar purpose for requiring the license sought to be imposed by providing in Section 7 of the ordinance that the fees be placed to the credit of the street repair fund.

By the grants of the corporation to these street car and interurban companies, as a part of the burden of their franchises to operate their cars upon the streets, the city has exacted that they maintain, repair, clean and sprinkle that portion of the streets between the outer rails and one foot on the outside. Council, having directed its attention to, and required of the car companies a supposed equitable share of the burden of repairing and taking care of the streets, as a part of the grant for operating their cars on the streets, can not justly, in my opinion, under the guise of a license, exact another burden for the same thing.

My conclusion is, that for the reasons above stated in the particulars mentioned, the council has transcended its powers and the ordinance is illegal and void.

A number of questions have been suggested and ably argued which I have not deemed it necessary to pass upon; I have not considered the question of the reasonableness or unreasonableness of the fees sought to be imposed. I desire further to thank and make due acknowledgment to counsel who have submitted briefs for the assistance they have rendered me.

A temporary injunction is granted as prayed for.

*James M. Butler* and *H. P. Junk,* for plaintiff.

*H. J. Booth, C. C. Williams* and *L. G. Addison,* for defendants.